Greeley v. Sample.

2. —— order of collector.

Reversed.

GREELEY v. SAMPLE *et al.*

1. **Fraudulent conveyance:** ESTABLISHED BY CIRCUMSTANCES. In an equitable proceeding to set aside a conveyance on the ground of fraud, the *mala fides* of the transaction was established by circumstances tending to show that the conveyance to the defendant was made without adequate consideration, after notice of the levy of an attachment on the premises by plaintiff, and with intent to defeat his claim.

2. **Pleading and practice:** PRO CONFESSO. Where default is made to a petition which alleges that defendant holds certain real estate fraudulently and in trust for another, such allegations will be taken as true.

*Appeal from Chickasaw District Court.*

FRIDAY, JUNE 14

AN equitable proceeding, in which the plaintiff seeks to have her title to a certain tract of land therein described made clear and perfect by the removal of a cloud cast upon the same by the conduct of defendants. The prayer of her petition was granted, a decree in her favor entered; and the defendants appeal. The facts of the case will appear in the opinion of the court.

*Bissel, Shiras & Ballou* for the defendant Reineger.

*A. G. Case* for the plaintiff.

LOWE, Ch. J. — The land in dispute is a part of the N. E. $\frac{1}{4}$, of the S. E. $\frac{1}{4}$, Sec. 18, T. 94, R. 14 W., and is described as follows: Commencing at the north-west corner of block No. 2, in the village of Nashua, Chickasaw county, thence north to the Cedar river, thence up the shore of said river to a line intersecting the same, running directly north from the north-west corner of block No. 3, in said Nashua; thence south to the north-west corner of block No. 3, in said Nashua; thence east to the place of beginning.

The plaintiff's title to this piece of land is founded upon a judicial sale derived as follows: In October, 1857, Andrew Sample, one of the defendants, was indebted to Joseph Greeley in three several sums, amounting in the aggregate to $5,500. One of these sums was for $4,000, money borrowed, secured by mortgage. In March, 1859, there being $400 interest due on this claim, of which James B. Greeley was then the legal owner, he, the said James, attached the above tract of land as the property of Andrew Sam-

1. FRAUDU-
LENT CONVEY-
ANCE: estab-
lished by cir-
cumstances.

ple, although the legal title at this time was standing in his wife, Sarah Sample. In November following, a judgment was obtained in said attachment suit. The property was afterward sold upon a special execution to James B. Greeley, the highest bidder, to whom, in December, 1862, a sheriff's deed was executed and delivered. Subsequently, James B. sold and conveyed said property to Joseph Greeley, and he, on the 3d of March, 1863, sold and conveyed the same to the plaintiff.

At the time the attachment was issued upon this property the legal title was standing in the name of Sarah Sample, the wife of the defendant in the attachment; but it is charged that the husband had caused the same to be placed there in fraud of creditors, and afterward, namely, on the 17th of February, 1860, the said Sarah Sample, in order, as it is alleged, to put the property still further beyond reach of creditors, conveyed the same to Robert G. Reineger, in his own right, and also made a deed of trust to him of the same property to secure an alleged indebtedness of $629.05 to Milo Gilbert.

Of the several parties made defendants in this suit, Gilbert and Reineger are the only ones who answered and contest plaintiff's right to the relief asked. There is no serious pretense that Gilbert has any right to or interest in the property which is the subject of this controversy. There can be but little question under the evidence, that at the time the deed of trust spoken of was executed and delivered to Reineger for his benefit, no liability whatever existed in his favor from the Samples, and that the same had been given from motives of caution only, to hold and protect the property in the event the absolute deed of the same property to Reineger should fail to do so. As the two deeds, made contemporaneously, are inconsistent with each other and unexplained, they go far to impeach the *bona fides* of Reineger's pretended title to the property.

Reineger, however, is the chief contestant of plaintiff's claim to the property, and he files a cross-bill setting up title thereto, and complains that plaintiff's claim of title is without any legal foundation and should be removed as a cloud upon his title.

He states the claim of his title to be as follows : On the 4th of April, 1856, the legal title of this property stood in Andrew Sample. At that date he conveyed one-half of it to Enock D. Woodbridge; the other half on the 25th of August, 1858, to his brother-in-law Jacob Beeler. These grantees reconveyed the property to Sarah Sample, the wife of said Andrew. One conveyance in December, 1858, the other (to Beeler) on the 20th of August, 1858, antedating the deed from Andrew Sample to him five days. This apparent conflict of dates is unexplained. In February, 1860, after this, Sarah Sample and her husband sold and conveyed this property to Reineger, for the expressed consideration of $500, although she had paid $5,000, according to the consideration stated in the conveyance to her.

It will be perceived from this statement of his title that he acquired it subsequent to the attachment levy, rendition of the judgment and sheriff's sale under which the plaintiff holds.

But he meets this phase of the case with two answers :

1. That he was a purchaser without notice. This, however, is very clearly disproved by the evidence. He was the attorney of Sample in the attachment suit, and was also present at the sheriff's sale, when certain matters occurred which could not fail to have apprised him of the situation of the property.

2. That the property was the homestead of the Samples, and, therefore, not liable to be attached or sold for their debts. This position is also untenable.

The evidence shows very conclusively that the debt for

which the homestead was attached and sold, was contracted previous to the erection and acquisition of the same, in fact the evidence tends strongly to show that Sample had erected his homestead with the money he had obtained of Greeley in the wây of a loan, and to secure a part of which he had attached and sold the homestead.

Besides all this, it is hardly necessary for us to add that the evidence goes far to show that the sale of this property from Sarah Sample to Reineger was made for a fraudulent purpose without consideration, and especially to ward off the Greeley claim. The testimony of the witness, Mitchell, was particularly forcible in this direction; and, if untrue, should, as it seems to us, have been rebutted by that of Mr. Reineger himself, as he was (as we suppose) a competent witness in the cause. We cannot see by his defense and cross-bill that Reineger has any stand in a court of equity.

The question still remains whether the plaintiff is entitled to the relief she asks, as against Andrew and Sarah Sample. As they do not answer 2. PLEADING AND PRAC-TICE: pro con-fesso. and deny the allegations of the petition as to themselves, they are to be taken as true. If so, Sarah Sample held this property in her own name fraudulently and in trust for her husband, and it should be subjected to the payment of the debts antedating the homestead right; provided, also, no other property could be found out of which to make the judgment. On this point, the evidence shows the insolvency of Andrew Sample; several executions had been returned *nulla bona.* It also shows that about the time the title of this property was taken to his wife he was indebted some $12,000, more or less. Under all the facts in the case we can see no reason why the judgment below should not be

Affirmed.