EDWARD N. MERRILL, assignee, in equity,

*vs.*

CHARLES McLAUGHLIN, and others.

Somerset. Opinion April 3, 1883.

*Insolvency. Preferred creditor. Equity.*

A payment made by an insolvent debtor to his creditor within four months before the filing of the petition may be invalidated as a preference made in fraud

of the insolvent law, when the bill alleges, and the evidence proves : (1) That the debtor was insolvent at the time of the payment, (2) that the debtor made it directly or indirectly, with a view to give a preference to the creditor, (3) that the creditor then had reasonable cause to believe the debtor to be insolvent, (4) that the creditor also had reasonable cause to believe the payment to be made in fraud of the insolvent law.

An insolvent debtor on the attachment of his entire stock of goods, sold the same to a third person, who, at the request of the debtor, and as a part of the consideration of the sale, paid the attaching creditor's debt and costs, whereupon the attachment was released, and the evidence of the debt surrendered to the debtor. The assignee of the debtor brought bill in equity against the creditor to recover the amount of the payment, upon the ground that it was made as a preference. *Held*, that the purchaser of the stock was not a necessary party.

BILL IN EQUITY by the plaintiff, as assignee in insolvency of Willis P. Ayer, to recover the sum of five hundred dollars paid to the defendants at the request of Ayer, by Joshua Burns.

Heard on bill, answer and proofs.

The opinion states the facts.

*Folsom and Merrill,* for the plaintiff, cited : *Gattman* v. *Honea,* 12 N. B. R. 493 ; *Foster* v. *Hackley,* 2 N. B. R. 414 ; *Miller* v. *Keys,* 3 N. B. R. 224 ; *London* v. *1st Nat. Bank,* 15 N. B. R. 476 ; *Denny* v. *Dana,* 2 Cush. 170 ; *Forbes* v. *Howe,* 102 Mass. 436 ; *Leonard* v. *Strong,* 11 Gray, 187.

*H. and W. J. Knowlton,* for the defendants.

Complainant must exhaust his remedy at law before he is entitled to relief by bill in equity. *Caswell* v. *Caswell,* 28 Maine, 232 ; *Spofford* v. *B. & B. Railroad,* 66 Maine, 51 ; *Fletcher* v. *Holmes,* 40 Maine, 364.

Plaintiff could recover, if defendant is liable, in an action for money had and received. *Crooker* v. *Rogers,* 58 Maine, 342.

Burns is shown by the testimony to have the possession of all the assets of the insolvent, holds a mortgage of the entire estate, personal and real, and should have been made a party. All interested in the subject of a suit in equity should be made a party. *Hussey* v. *Dole,* 24 Maine, 20, and cases cited ; *Morse*

v. *Machias W. P. Mill Co.* 42 Maine, 129; *Evans* v. *Chism,* 18 Maine, 223.

"Bill cannot be sustained without proper parties, and the court will take notice if they are not before it." *Pierce* v. *Faunce,* 47 Maine, 513.

There was no sale, transfer or assignment of any property of the insolvent to the defendants. The note and money were not a part of the assets of insolvent when delivered to Allbee, the sheriff, and the note was subsequently endorsed by defendants to a third party.

VIRGIN, J. This is a bill in equity, brought by the assignee of an insolvent, to recover a certain sum of money alleged to have been paid, within two months prior to the commencement of proceedings in insolvency, by the insolvent to the defendants, in discharge of a pre-existing debt.

The bill contains no allegation that the alleged payment was "received by the creditors as a preference," and hence it does not present a case within the provisions of St. 1878, c. 74, § 30, as amended by St. 1879, c. 154, § 13. Does it contain sufficient allegations to bring the plaintiff's case within the provisions of any other section of the statute relating to insolvency?

The material provisions of § 48 as amended by St. 1879, c. 154, § 22, so far as they are applicable to the plaintiff's case, are in substance: If any debtor, being insolvent, shall, within four months before the filing of the petition against him, make any payment either directly or indirectly, with a view to give a preference to any creditor, the person receiving such payment having reasonable cause to believe such debtor to be insolvent, and that such payment is made in fraud of the laws relating to insolvency, the same shall be void; and the assignee may recover it or its value from the person so receiving it. And after setting out the filing of the petition in April, 1880; the adjudication of the debtor's insolvency, in May following; the appointment and qualification as assignee of the plaintiff, and the due execution and record of the assignment to him, in June succeeding, the bill proceeds to allege, in substance: 1st, that on March 27, 1880, the debtor was insolvent; 2d, that he then paid his debt

of $500 to the defendants, with a view to give them a preference ;. 3d, that the defendants then had reasonable cause to believe the debtor to be insolvent; and 4th, that they, also, then had reasonable cause to believe the payment to be made in fraud of the statute. These are the substantive conditions, which, under § 35, of the late bankrupt act of the U. S. invalidated a payment made within the specified time (*Forbes* v. *Howe*, 102 Mass. 433 ; *Toof* v. *Martin*, 13 Wall. 40, 46 ; *Wager* v. *Hall*, 16 Wall. 584) ; and the provisions of our statute above alluded to, are a substantial transcript of § 35. Our opinion that the bill is sufficient is thus sustained.

Are these allegations proved?

1. That the debtor, who was then engaged in trade in a country village, was hopelessly insolvent is not denied. He not only could not meet and pay his debts as they became due, in the ordinary course of business (*Lee* v. *Kilburn*, 3 Gray, 595 ; *Toof* v. *Martin*, 13 Wall. 40), but the defendants' attachment wound up his business.

2. The defendants deny that the debtor made any payment to them, but claim that they received from Burns the money and note for which they discharged their attachment and debt. But the payment came " indirectly," at least, from the debtor. It was made by Burns in person, but by the request of the debtor, and as part of the consideration of the sale of the debtor's stock, he being obliged to close up in order to raise funds to pay the defendants' debt against him. Under these, and various other attending circumstances, the allegation, that Burns and not the debtor made the payment, is too transparent for our satisfaction. Moreover the payment, while thus insolvent, of such a sum without property or funds to satisfy the debtor's other creditors, must be considered as made with a legal view to give a preference to the defendants. *Toof* v. *Martin, supra; Wager* v. *Hall, supra.*

3. Before, at the time of and after the defendants' attachment, their attorney was in the village where the debtor was trading. Wisely concluding that, a debtor, with successive mortgages on his little stock, could not go on with his business or even pay the defendants, the attorney placed the writ in the hands of the officer who

attached the stock and closed the store on the 24th. Thus matters remained until the 27th, when, on receiving the debt and costs in full from the consideration of the sale to Burns, the officer (of course by directions of the attorney) surrendered the note sued on together with the receipted bill, and released the attachment. Most assuredly these facts were calculated to produce a reasonable belief of the debtor's insolvency in the mind of an ordinarily intelligent man ; and that is what and all that the law requires in respect to this branch of the case. Cases above cited. *Grant* v. *National Bank*, 97 U. S. 80, 82 ; *Barbour* v. *Priest*, 103 U. S. 293, 297.

4. It is the general purpose of the statute of insolvency to obtain a surrender of an insolvent debtor's property, and to effect a *pro rata* distribution thereof, among his creditors, resident in this state, and such others as voluntarily come in and prove their debts. The statute thus becomes a part of the obligation of contracts completed between citizens of this state since its enactment. And now when a debtor becomes insolvent, his creditors are entitled to such a distribution, and when it is made, the debtor is entitled to be discharged or absolved from such contracts. When, therefore, a creditor of such a debtor, either by voluntary payment on the part of the latter, or by proceedings *in invitum*, within the time prescribed in the statute, obtains more than his share of the debtor's property, he thereby thwarts the wise purpose of the law. And if the facts and circumstances attending the obtaining of his pay, are such as afford him reasonable cause to believe that he thereby prevents other creditors from obtaining theirs, and such is the effect in fact, the law will not permit him to reap the advantages of his legal wrong, but will cause him to surrender whatever he obtained to the assignee.

From the facts heretofore stated, it would seem to necessarily follow that, the obtaining of their entire pay by the defendants, when and under the circumstances attending it, was ample evidence that they had reasonable cause to believe the payment was in violation of the act. The defendants finding their debtor insolvent, attached his stock, retained it three days and until their debtor was obliged to sell out and pay out of the proceeds

of the sale their entire debt and costs. That the effect of this was to prevent a *pro rata* distribution among the other creditors, does not admit of any reasonable doubt, and that the defendants knew it, seems equally certain, though they probably hoped to escape through the indirect path which they pursued.

It is urged that the plaintiff has a plain, adequate and complete remedy at law, and that, therefore, this bill in equity cannot be maintained. But fraud being the gravamen of the complaint, equity and law have a concurrent jurisdiction with certain exceptions which do not include this case. This subject has so recently been examined by this court in *Taylor* v. *Taylor*, 74 Maine, 582, that we need only to refer to that case.

Burns is not a necessary party. The money is sought to be recovered from the defendants, because it was wrongfully received by them from Ayer in payment of their debt against him. That Ayer used the hand of Burns, making him agent *pro hac*, to deliver the money, in nowise renders Burns interested in the result of this suit. A complete decree can be made between the defendants and the assignee, without touching the rights of Burns, inasmuch as the sale of the goods from Ayer to him, is not involved here.

*Bill sustained with costs.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.