**SHEEPSCOT LAND CORPORATION**

v.

**Elizabeth K. GREGORY.**

Supreme Judicial Court of Maine.

Feb. 24, 1978.

Samuel G. Cohen, Stanley P. Cohen (orally), Waldoboro, John R. Sandler, Wiscasset, for plaintiff.

Perkins & Perkins by James B. Perkins (orally), Boothbay Harbor, Grant Lyons, Damariscotta, for defendant.

Before DUFRESNE, C. J., and POMER-OY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, A. R. J.[1]

The plaintiff, Sheepscot Land Corporation (Sheepscot), on February 5, 1974 filed through new counsel a motion in the Superior Court (Lincoln County) praying that the default which had been entered against it in its action against the defendant, Elizabeth K. Gregory, on January 7, 1974 be set aside for the following reasons:

"A. That it had relieved its Counsel, . . . on December 17, 1973.

"B. That the Plaintiff did not have knowledge or notice of the provision of default to be entered if it failed to appear at the trial.

"C. That the Plaintiff's complaint has merit."[2]

Sheepscot's motion was denied on February 11, 1974 and the Court ordered a judgment of dismissal respecting the plaintiff's partition complaint and a default judgment in the defendant's counterclaim which in effect set aside as fraudulent conveyances real and personal property transfers by Lewis E. Gregory to the plaintiff corporation through the medium of one Julius H. Sedlmayr. Sheepscot appeals. We deny the appeal.

The record discloses the following factual background from which the reference judgments on appeal arose. Lewis E. Gregory and Elizabeth K. Gregory were divorced on December 17, 1965 after a spirited contest, the decree being granted on Mrs. Gregory's counterclaim. In the divorce action, the Superior Court Justice made certain findings of fact of some relevancy in the instant litigation, such as that Mr. Gregory, upon his being served a summons in New York in connection with a support proceeding, had transferred securities worth $80,000.00 to his brother, that these securities belonged to Lewis Gregory notwithstanding the transfer, and that the value of Mr. Gregory's total assets, at the time of the divorce, exclusive of the home [the subject of the present partition action] which he owned jointly with Mrs. Gregory, was in the amount of $150,000.00. The divorce Court ordered Mr. Gregory to pay to Mrs. Gregory *forthwith,* in lieu of alimony, the sum of twenty-five thousand ($25,000.00) dollars, but to this day no part of that judgment has been satisfied, even though several capias executions have been issued against Mr. Gregory, including one presently outstanding at the time of the instant proceedings.

Sheepscot Land Corporation, the plaintiff, was organized by plaintiff's original counsel in the partition action on June 21, 1972 as a Maine corporation, with only one shareholder of no par value stock, the charter providing that the meetings of the shareholders may be held outside the State of Maine.

On January 19, 1973 Sheepscot instituted the present action in the Superior Court

---

1. Mr. Justice Dufresne sat at oral argument and participated in consultation while he was Chief Justice, and, on order of his successor, Mr. Chief Justice McKusick, was empowered and authorized to continue his participation in the case in his capacity of Active Retired Justice.

2. Although Sheepscot, through its president, Lewis E. Gregory, had dismissed its counsel on December 17, 1973, the Superior Court Justice did not grant counsel leave to withdraw until December 27, 1973.

(Lincoln County) to partition the real and personal property formerly held in joint tenancy by Mr. and Mrs. Gregory, claiming an interest therein as tenant in common by reason of assignments from Mr. Gregory.

In her counterclaim, Mrs. Gregory asserts that the conveyances made by Mr. Gregory, whether to the plaintiff corporation directly, or through the mesne intervention of his friend, Julius H. Sedlmayr, were effected for the sole purpose of hindering, delaying and defrauding her in her attempt to satisfy her judgment claim of twenty-five thousand ($25,000.00) dollars, plus interest, against Mr. Gregory, the then president of Sheepscot. In her counterclaim, Mrs. Gregory prayed, among other claims of relief, that all such transfers be set aside and that such property presently in the name of Sheepscot be placed back in the name of Lewis E. Gregory as the true owner in fact and that the same be so recorded in the Lincoln County Registry of Deeds, in aid to further proceedings to be taken in satisfaction of the outstanding execution on judgment.

In chronological order, the following procedural scenario took place. Both parties filed their respective pretrial memorandum pursuant to Rule 16, M.R.Civ.P., the plaintiff on September 18, 1973 and the defendant, on October 3, 1973. A pretrial conference was held on October 29, 1973 between counsel for the parties and a Justice of the Superior Court other than the Justice whose dismissal-default judgments are presently on appeal. The pro forma pretrial order signed by the then presiding Justice to the effect that

"[a]fter conference and review of the file it is apparent that the pleadings and Pre-Trial Memorandums are sufficient to govern the course of the Trial and are therefore adopted, except as hereinafter noted,"

did nothing to refine the issues, to secure agreement on the admissibility of exhibits, to identify trial witnesses, to uncover the nature and scope of the special damages claimed, in other words, it utterly failed to promote the purposes for which Rule 16 was promulgated, which are—"to consider:

(1) The simplification of the issues.

(2) The necessity or desirability of amendments to the pleadings.

(3) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof.

(4) The limitation of the number of expert witnesses; and

(5) Such other matters as may aid in the disposition of the action."

The pretrial order of October 29, 1973, however, did accomplish two things. It ordered the case to be placed on the trial calendar as a non-jury matter by agreement and authorized amendments by the defendant, the docket entries of that date showing that hearing was set for 11:00 a. m. on November 8, 1973 on any future motions.

On November 8, 1973 the defendant's motion to amend her counterclaim was heard and granted by the second Justice. At that time, trial of the action was set for 9:30 a. m., December 12, 1973.

On December 12, 1973 counsel for both parties met with the second Justice and, in the apparent prospect of a probable settlement, they concurred in and endorsed a certain memorandum of record, in which it was agreed tentatively, among other things, as follows: the defendant, Mrs. Gregory, then Chapman, would release Lewis Gregory from any and all claims, including but not limited to the outstanding judgment in the divorce decree; Lewis Gregory and/or Sheepscot Land Corporation shall quitclaim any and all interest in the real estate in Sheepscot; the parties will agree upon a list of the inventory of personal contents which the defendant will agree to permit the plaintiff and/or Lewis Gregory to remove from the premises, with the plaintiff and/or Lewis Gregory to furnish not less than ten (10) days written notice of the time and dates when he is to come to remove the property; during the morning conference counsel for the plaintiff had been talking with his client [with Mr. Gregory] on the telephone on two occasions; the only matter left in dispute was the inventory items; if the inventory were satisfactory, he had

agreed to the settlement; Lewis Gregory had indicated to counsel that as president of Sheepscot Land Corporation the settlement would be agreeable if he could retain twenty (20) of the forty (40) acres of real estate involved, leaving to Mrs. Gregory and/or Mrs. Chapman twenty (20) acres with the improvements thereon; if the settlement was not concluded by December 20, 1973, the case would be heard on December 27, 1973.

As indicated previously, the plaintiff corporation dismissed its counsel on December 17, 1973, which resulted in counsel's request for leave to withdraw addressed to the presiding Justice under date of December 26, 1973.

On December 27, 1973, when the case was scheduled to be tried pursuant to the parties' agreement under Court direction, the plaintiff's dismissed attorneys were present in court; so was the defendant with her attorneys and her witnesses. Mr. Gregory, president of the plaintiff corporation, was not present, although counsel for the plaintiff informed the Court that Mr. Gregory had been fully informed respecting the results of the pretrial conference of December 12, 1973. Under the circumstances, the presiding Justice, in addition to his granting leave to withdraw to plaintiff's counsel, made the following order:

"The Clerk will make the following entry:

Plaintiff Sheepscot Land Corp. to be defaulted on January 7th, 1974, unless on or before that date Plaintiff appears either personally (sic) or through new counsel to show cause why the default should not then be entered.

\* \* \* \* \* \*

"Further ordered that the clerk send forthwith a copy of this decision and attachments thereto to Lewis Gregory, Sheepscot Land Corporation, Duck Pond Road, Glen Cove, New York 11542 by Registered Mail, Return Receipt."

The Court's order of December 27, 1973 was complied with and on the same day notice thereof was sent to Sheepscot Land Corporation in the name of Lewis Gregory,

its president, with the selected optional service of delivery to addressee only. This registered mail was returned as having been refused on December 29, 1973.

Default judgments in favor of the defendant, Elizabeth K. Gregory, and against the plaintiff corporation, both on the main action and on the counterclaim, were not rendered by the Court below until February 11, 1974 when the Court denied the plaintiff's motion to set aside the entry of default which had been made on January 7, 1974 pursuant to the order of the Court dated December 27, 1973.

In order to determine the propriety of the denial of the plaintiff's motion to set aside the default entry which resulted in the default judgments which are the subject of this appeal, we must inquire into the factual situation which led to the default. It is well established that a motion to set aside a default entry, as well as the default judgment resulting therefrom, is addressed to the sound discretion of the trial court, and its ruling is reviewable on appeal only for an abuse of discretion.

A party seeking to be relieved from a default entry "for good cause shown" (Rule 55(c), M.R.Civ.P.), or from the resulting default judgment for any one or more of the reasons enumerated in Rule 60(b), M.R.Civ.P., such as, among others, (1) mistake, inadvertence, surprise, or excusable neglect, or (6) any other reason justifying relief from the operation of the judgment, must present competent evidence from which the trial Justice in the exercise of sound judicial discretion could properly conclude that the default entry or default judgment was entertained within circumstances which Rule 60(b) recognizes as justifying their being set aside. See *Warren v. Waterville Urban Renewal Authority,* Me., 290 A.2d 362 (1972); *Willette v. Umhoeffer,* Me., 245 A.2d 540 (1968).

From the Court's decision of February 11, 1974, we note that the presiding Justice, in ordering judgment of dismissal respecting the plaintiff's partition complaint and the entry of a default judgment providing the

affirmative relief to the defendant which she had prayed for in her counterclaim, did so on the basis of the allegations asserted in the defendant's counterclaim, which factual averments were accepted as true and affirmed as findings of fact.

A. *Defendant was entitled to default judgment on her counterclaim, even though the Court did not proceed to take out evidence in support of the defendant's claim that Mr. Gregory's conveyances were fraudulent in an effort to hinder, delay or prevent the satisfaction of her twenty-five thousand dollar judgment.*

In *Lindsey v. County of Cumberland,* Me., 278 A.2d 391 (1971), this Court said in connection with a Superior Court proceeding seeking the issuance of the writ of habeas corpus at page 392, in footnote 2:

"The presiding Justice considered as a strong analogy to guide him in the present situation our prior practice in equity in which, after a bill in equity had been taken pro confesso for want of appearance, the merits of the bill were often required to be proved *when there was doubt* as to the applicable law or *as to the truth of factual allegations.*" (Emphasis supplied)

Such rationale was properly expressed in *Thomson v. Wooster,* 114 U.S. 104, at 111, 5 S.Ct. 788, at 791, 29 L.Ed. 105 in manner as follows:

" '[W]hen the allegations of a bill are distinct and positive, and the bill is taken as confessed, such allegations are taken as true, without proofs,' and a decree will be made accordingly; but 'where the allegations of a bill are indefinite, or the demand of the complainant is in its nature uncertain, the certainty requisite to a proper decree must be afforded by proofs. The bill, when confessed by the default of the defendant, is taken to be true in all matters alleged with sufficient certainty; but in respect to matters not alleged with due certainty, or subjects which from their nature and the course of the court require an examination of details, the obligation to furnish proofs rests on the complainant.' "

Prior to the adoption of the Maine Rules of Civil Procedure, effective December 1, 1959, the pro confesso decree methodology in handling defaulting parties in the equity branch of our trial courts was spelled out in legislation. See Revised Statutes, 1954, c. 107, §§ 14–15 (repealed by Public Laws, 1959, c. 317, § 86, effective December 1, 1959). The original act to regulate the reference practice in equity proceedings was enacted by Public Laws, 1881, c. 68, §§ 4 and 5. But the procedure existed independently of statute. See *Adams v. Stevens,* 49 Me. 362, 365 (1861). The effect under the pre-rule procedure of taking a bill in equity pro confesso on default was similar (so this Court stated in *Glover v. Jones,* 95 Me. 303, 49 A. 1104 (1901)) to that of a default in an action at common law, by which the defendant is deemed to have admitted all that is well pleaded in the declaration.

Rule 1, M.R.Civ.P. provides that

"[t]hese rules govern the procedure in the Superior Court and before a single justice of the Supreme Judicial Court in all suits of a civil nature whether cognizable as cases at law or in equity, . . . They shall be construed to secure the just, speedy and inexpensive determination of every action."

Rule 81, M.R.Civ.P., in specifying the proceedings to which the rules are fully applicable, restates the comprehensive and all-inclusive procedural system they were intended to bring about, paralleling the provisions of Rule 1, in that

(a) "These rules apply to all proceedings in suits of a civil nature in the Superior Court or before a single justice of the Supreme Judicial Court, with the exceptions set forth in subdivision (b) of this rule [the exceptions are not applicable here].

\* \* \* \* \* \*

"A civil action under these rules is appropriate whether the suit is cognizable at law or in equity and irrespective

of any statutory provisions as to the form of action."

The rules in our opinion clearly have displaced the former pro confesso judgment procedure which existed in our equity practice by providing a unitary default mechanism to govern in all civil actions, whether formerly cognizable at law or in equity.

We note that Rule 55, respecting defaults, does reflect the former equitable practice by providing for an evidentiary hearing under certain circumstances:

Rule 55(b)(2). "If, in order to enable the court to enter [default] judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or *to establish the truth of any averment by evidence* or to make an investigation of any other matter, the court *may* conduct such hearings or order such references *as it deems necessary and proper* and shall accord a right of trial by jury to the plaintiff if he so requests." (Emphasis added)

Under Rule 55(d), the default provisions of the rules apply in favor of a party defendant, who has pleaded a counterclaim.

It is discretionary with the court in the case of a defaulting party to determine, whether the allegations of the other party's pleadings are definite and certain in nature under all the surrounding circumstances as revealed by the record, or whether further evidentiary examination into the details of the situation is required. The following authorities sanction default judgments without further hearing. *Massa v. Jiffy Products Co.*, 240 F.2d 702 (9th Cir. 1957); *Brown v. Kenron Aluminum and Glass Corporation*, 477 F.2d 526 (8th Cir. 1973); *Danbom v. Danbom*, 132 Neb. 858, 273 N.W. 502 (1937); *Gillam v. Cherry*, 192 N.C. 195, 134 S.E. 423 (1926).

B. *Defendant was entitled to default judgment on her counterclaim, notwithstanding plaintiff had appeared and filed answer.*

It may be that the order of the Court below, causing 1) a default to be entered and 2) after denial of the motion to set the same aside, the entry of a default judgment against the plaintiff on the defendant's counterclaim, might not have been technically correct, absent a striking of the plaintiff's answer to the counterclaim. Some authorities view default judgments under such circumstances as inappropriate. See *Ed Martin Ford Co., Inc. v. Martin*, 363 N.E.2d 1292 (Ind.App.1977); *Frymire Engineering Company, Inc. v. Grantham*, 524 S.W.2d 680 (Tex.1975).

But the term "default" has a broader application than to encompass solely the situation where a party fails to plead by answer, reply to a counterclaim or other permissible pleading under the rules. In its broad sense, it takes in the failure, notwithstanding the answer, of a party to further assert his rights by non-appearance for trial. In the instant case, the defendant had a right to proceed to try her case at the time set for hearing. The court must dispense justice between the parties, but it must also perform its own duty to make itself available to others. If a trial court is powerless to insist upon a prompt disposal of a case when called for trial, then the business before the trial courts would be interminably prolonged. Public policy requires the use of default judgments under such circumstances. *Vaux v. Hensal*, 224 Iowa 1055, 277 N.W. 718 (1938); *Dimond v. Marwell*, 57 R.I. 477, 190 A. 683 (1937).

In this case, it was understood by all the parties as a result of a pretrial conference that, if the intended settlement of the litigation fell through, the matter would be heard on December 27, 1973 by the Court without a jury as previously agreed. The plaintiff corporation, which had then dismissed its counsel, failed to respond for trial in total disregard of the court notice by registered mail which the plaintiff's president refused to accept. A default judgment is appropriate where the record indicates unconscionable delay or contumacious conduct. *Millett v. Dumais*, Me., 365 A.2d 1038, 1040 (1976); *Central Tel. Co. of Ill. v. Amedio Ritacca & Sons*,

*Inc.,* 23 Ill.App.3d 171, 318 N.E.2d 515 (1974); *Gomes v. Williams,* 420 F.2d 1364 (10 Cir. 1970).

The default in the instant case was proper under Rule 16(c)(4) and 16(d). Rule 16(c)(4) provides in pertinent part that

"[u]pon completion of the pre-trial conference the court shall order the clerk to transfer the action to the appropriate Trial· List maintained under Rule 40(a) *and may further direct the specific scheduling* of trial for the action. . . . " (Emphasis provided)

Here, the presiding Justice had directed the specific time at which the case was set to be tried.

Rule 16(d) enumerates the sanctions available upon noncompliance with the rule:

"If a party fails to comply with the requirements of this rule or any order made hereunder, the court may impose upon the party or his attorney or both such penalties and sanctions as the circumstances warrant, which may include the dismissal of the action or any part thereof with or without prejudice, the default of a party, the exclusion of evidence at the trial, and the imposition of costs including attorney's fees and travel."

We are aware, as stated in *Millett v. Dumais,* supra, that the granting of a default judgment is discretionary, the presumption being that justice is better served by adjudicating cases on their merits than by the use of default judgments. Id. at page 1040. The same is true on the motion of a defaulted party to set aside the default judgment. *Otis Engineering Corporation v. Grace,* 86 N.M. 727, 527 P.2d 322 (1974).

The rationale underlying our default judgment mechanism is to empower trial judges to invoke such drastic sanction in order to retain control of their trial dockets and to dispense justice between the parties by protecting the diligent against parties who choose delay as part of their litigative strategy. *Gallegos v. Franklin,* 89 N.M. 118, 547 P.2d 1160 (1976); *Bigelow v. Walraven,* 392 Mich. 566, 221 N.W.2d 328

(1974); *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder L.,* 139 U.S.App.D.C. 256, 432 F.2d 689 (1970).

C. *The plaintiff's claim that it had no knowledge of the factual situation must be rejected.*

The record undisputably reveals that Mr. Gregory has been successful for these 'many years in avoiding any payment whatsoever on the divorce judgment rendered December 17, 1965. Viewed in the light of his tactical avoidance of. previous court processes and given the fact that the stalling break-down of the on-going settlement negotiations appears to be of his own ·making to the frustration of counsel of his own choosing, Mr. Gregory's refusal to accept for the plaintiff corporation the Court's notice of the trial date which was sent to him in his capacity of president of Sheepscot Land Corporation by certified mail, return receipt requested, with the further request of delivery to addressee only, smacks of conduct in utter and hostile disregard for judicial proceedings and of contumacious characteristics. See *Residential Reroofing Union Local 30–B, etc. v. Mezicco,* 55 F.R.D. 516 (U.S.D.C., E.D.Pa.1972).

The plaintiff corporation must be charged with the acts of its president, and its agent's refusal to receive the Court's notice of the date of trial estops it from urging that it did not receive the same and had no knowledge of its contents. See *Stoller v. Holdren,* 47 Ill.App.2d 81, 197 N.E.2d 492 (1964).

As stated in *Knapp v. Bailey,* 79 Me. 195, 204, 9 A. 122, 124 (1887):

"If a party has knowledge of such facts as would lead a fair and prudent man, using ordinary caution, to make further inquiries, *and he avoids the inquiry,* he is chargeable with notice of the facts which by ordinary diligence he would have ascertained. He has no right to shut his eyes against the light before him. He does a wrong not to heed the 'signs and signals' seen by him. *It may be well concluded that he is avoiding notice of that which he in reality believes or*

*knows.* Actual notice of facts which, to the mind of a prudent man, indicate notice—is proof of notice." (Emphasis supplemental)

**D.** *The averments of the defendant's counterclaim are to be taken as true.*

Mrs. Gregory's counterclaim alleges sufficient facts to constitute a claim for relief against the plaintiff corporation as the recipient of real and personal property conveyed to it by Mr. Gregory through the medium of Mr. Sedlmayr in fraud of the rights of Mrs. Gregory as a creditor. See *Bailey v. Bailey,* 61 Me. 361 (1873); *Tobie and Clark Manufacturing Co. v. Waldron,* 75 Me. 472 (1883); *Whitehouse v. Bolster,* 95 Me. 458, 50 A. 240 (1901).

■ By virtue of the plaintiff's default by reason of its non-appearance at the time set for trial, the averments of the counterclaim are taken as true and, in effect, become findings of fact. *Gallegos v. Franklin,* 89 N.M. 118, 547 P.2d 1160 (1976); *Brown v. Kenron Aluminum and Glass Corporation,* 477 F.2d 526 (8th Cir. 1973); *Massa v. Jiffy Products Co.,* 240 F.2d 702 (9th Cir. 1957); *Danbom v. Danbom,* 132 Neb. 858, 273 N.W. 502 (1937); *Gillam v. Cherry,* 192 N.C. 195, 134 S.E. 423 (1926); *Greeley v. Sample,* 22 Iowa 338 (1867).

**E.** *Plaintiff's failure to show a meritorious defense to the counterclaim.*

■ The record is silent regarding the facts which might dispute the claim that Mr. Gregory's conveyances were not in good faith but were merely a device to hinder, delay and defraud Mrs. Gregory in the satisfaction of her divorce judgment-execution in the amount of twenty-five thousand ($25,000.00) dollars. If the trial court is to determine the meritorious nature of the defaulted party's alleged defense, it must be presented facts from which it may conclude that such a meritorious defense exists. The mere assertion that such a meritorious defense does exist is insufficient to support a motion to set aside a default entry or default judgment. Whether the default entry or default judgment resulted from fac-

tual circumstances justifying relief is a question of fact and must be proven by evidence, which, as appears from this record, was not forthcoming. *Willette v. Umhoeffer,* supra; *Consolidated Masonry & Fireproof, Inc. v. Wagman Const. Co.,* 383 F.2d 249 (4th Cir. 1967); *Gomes v. Williams,* 420 F.2d 1364 (10th Cir. 1970).

**F.** *Whether Messieurs Gregory and Seldmayr are indispensable parties without whom the Court below could not proceed to judgment.*

The parties did not raise this issue, but, since the case will necessitate further proceedings in the trial court to enforce the default judgment, we have considered the same. It is true that Mr. Gregory and Mr. Sedlmayr were not made parties before the Court.

■ A person through whom a fraudulent conveyance passed and who acted merely to promote the scheme to defraud his grantor's creditors, has no legal or equitable interest in the property fraudulently conveyed and is not a necessary party to a proceeding to set aside the conveyance, even though he may be a proper party. *Damazo v. Wahby,* 269 Md. 252, 305 A.2d 138 (1973); *Rozan v. Rozan,* 129 N.W.2d 694 (N.D.1964); *Cable v. Cable,* 132 W.Va. 620, 53 S.E.2d 637 (1949). Thus, Mr. Sedlmayr is not an indispensable party, since he has no interest relating to the subject of the action. See also *Merrill v. McLaughlin,* 75 Me. 64 (1883).

■ Mr. Gregory, also, is not an indispensable party. The fraudulent grantor is not an indispensable party to an action against his grantees to set aside a conveyance alleged to be in fraud of his creditors, especially in the instant case where by judicial decree the conveyance is declared void as in fraud of creditors and the fraudulent grantor's original status quo is re-established. *Blanc v. Paymaster Mining Co.,* 95 Cal. 524, 30 P. 765, 29 Am.St.Rep. 149 (1892); *Coffey v. Norwood,* 81 Ala. 512, 8 So. 199 (1886); *Potter v. Phillips,* 44 Iowa 353 (1876).

Complete relief can be accorded among those made parties to this action.

 Inasmuch as the conveyances were void as far as the defendant, Elizabeth K. Gregory, was concerned, it becomes immaterial whether Mr. Sedlmayr, the first grantee, participated in the fraudulent intent or not; the judgment of the Court which in practical effect revests title in the fraudulent grantor, Mr. Gregory, leaves no party to contend for the title. See *Bailey v. Bailey,* 61 Me. 361 (1873).

The entry will be

Appeal denied.

Judgment of dismissal of plaintiff's complaint affirmed.

Default judgment in favor of the defendant, Elizabeth K. Gregory, against the plaintiff, Sheepscot Land Corporation, on defendant's counterclaim affirmed.

Remanded for further proceedings.

WEATHERBEE, J., did not sit.

DELAHANTY, J., sat at oral argument and conference, but did not otherwise participate.