In re VANTAGE PETROLEUM CORP., Debtor.

In re Lawrence S. and Cheryl IORIZZO, Debtors.

George W. HUDTWALKER, Jr., Chapter 11 Trustee For Vantage Petroleum Corp., and Thomas J. Lo Presto, Chapter 11 Trustee for Lawrence S. and Cheryl Iorizzo, Plaintiffs,

v.

FUTURE POSITIONS CORP., Lawrence S. Iorizzo, Cheryl Iorizzo, Sebastian M. Lombardo, General Oil Distributors, Inc., and/or Wechter Petroleum Corp., B.P. Oil, Inc., and Doe Shareholders, Defendants.

Bankruptcy Nos. 882–81962–20, 883–31066–20.
Adv. No. 883–0799–20.

United States Bankruptcy Court, E.D. New York, at Westbury.

Sept. 27, 1984.

Thomas Fitzpatrick, New York City, for defendant Future Positions Corp.

Squadron, Ellenoff, Plesent & Lehrer by Judith R. Cohen and Harvis & Zeichner by Nathan Schwed, New York City, for trustee.

ROBERT JOHN HALL, Bankruptcy Judge.

Plaintiff Trustees move for entry of a default judgment against defendant Future Positions Corp. ("Future Positions"). Future Positions admits it is in default, but argues that under the Trustees' allegations, its liability necessarily depends upon the liability of the remaining defendants, and that therefore a default judgment should not be entered unless and until the remaining defendants are found liable.

HISTORY OF PROCEEDINGS

Vantage Petroleum Corp. ("Vantage") was and is in the business of leasing, restoring and maintaining service stations throughout the New York metropolitan area. On August 2, 1982, an involuntary petition was filed against Vantage. Thereafter, on August 24, 1982, Vantage converted the case to a proceeding under chapter 11 of the Bankruptcy Code. On September 8, 1982, based upon this court's findings that under the management of Lawrence S. Iorizzo and Cheryl Iorizzo ("the Iorizzos"), Vantage had defrauded the creditors of Vantage out of millions of dollars, George W. Hudtwalker was appointed Trustee pursuant to 11 U.S.C. § 1104(a).

On May 27, 1983, the Iorizzos filed a joint petition for relief under chapter 11 of the Bankruptcy Code. Based on this

court's previous findings of fraud on the part of the Iorizzos, the court appointed Thomas LoPresto as chapter 11 Trustee for the Iorizzo estate.

The Trustees instituted this adversary proceeding on December 7, 1983, alleging that the "Iorizzos, Lombardo and the Doe Shareholders have utilized Future Positions as an alter ego for Vantage and/or Iorizzo and a vehicle by which these two debtors can transfer funds so as to delay, hinder and defraud their own creditors and nonetheless utilize such funds for their own personal benefit."

The operative allegations of the Trustees complaint are as follows:

(a) Upon information and belief, the Doe Shareholders purchased their shares of Future Positions with monies transferred to them by Vantage and/or the Iorizzos.

(b) Upon information and belief, Vantage and/or the Iorizzos have transferred to Future Positions funds believed to be in excess of $1,000,000, which funds Future Positions has used to finance its operations. Upon information and belief, the Iorizzos have personally taken substantial amounts of the income and profits generated as a direct result of these transfers of funds.

(c) Prior to the appointment of the Vantage Trustee, the Iorizzos exercised total dominion and control over Vantage's operations, finances and disbursements and similarly now exercise total dominion and control over Future Positions's operations, finances and disbursements.

(d) All of the current employees of Future Positions were employees of Vantage prior to the appointment of the Vantage Trustee and, upon information and belief, assisted Vantage, the Iorizzos, Lombardo and the Doe Shareholders in the illegal transfer of funds from Vantage and/or the Iorizzos to Future Positions.

(e) The offices of Future Positions are located at 853 Walt Whitman Road, Melville, New York, property purchased in Lawrence Iorizzo's name, with Vantage funds in May, 1979. Future Positions is either not paying any rent for its use and occupancy of this property or is paying rent to Lawrence Iorizzo personally, as a method by which the illegally transferred funds are transferred back to Lawrence Iorizzo.

(f) Chevron has been making its rental payments to the Iorizzos, who deposited these payments in Vantage's bank accounts until he (sic) ceased to exercise total dominion and control over Vantage. Thereafter, he deposited Chevron's rental payments in his personal bank accounts and, upon information and belief, since the appointment of the Iorizzos' Trustee, he has deposited these rental payments in Future Positions' bank accounts.

(g) Future Positions has issued two checks dated May 26, 1983, in the total amount of $35,000, to Chester B. Salomon, Esq. ("Salomon") to pay for the costs incurred by the Iorizzos for legal services rendered and to be rendered to them in connection with their personal bankruptcy and in connection with their representation by Salomon in the *Vantage* bankruptcy. Upon information and belief, Future Positions has disbursed additional funds in payment of the Iorizzos' personal expenses.

Based upon these operative allegations, the Trustees' request judgment declaring that (1) all the property of Future Positions is the property of the Trustees; and (2) all of the money and assets that were transferred from the debtors to Future Positions be returned. The Trustees' claims against the defendants are based on several theories of law, including an *alter ego* theory, a breach of fiduciary obligations theory, a constructive fraud theory, and an actual fraud theory. Regardless of which theory is considered, it is clear that the Trustees' claims are all based upon allegations that defendants other than Future Positions transferred assets from the debtors to Future Positions.

In order to prohibit the transfer or assignment of the property which is alleged to have been illegally transferred to Future Positions, immediately upon filing their complaint the Trustees requested a Writ of Attachment, attaching, liening and levying upon all of Future Positions' property. Pursuant to Bankruptcy Rule 7064 and C.P.L.R. 6201, an order of attachment was granted *ex parte* by this court on December 7, 1983 and was confirmed after a hearing on December 12, 1983. The attachment encompassed all of Future Positions' property.

The Trustees complaint alleges wrongdoing on the part of the Iorizzos, Lombardo, the Doe Shareholders and Future Positions. In lieu of defending these charges, as the Iorizzos and Lombardo have chosen to do, Future Positions, through its attorney Thomas Fitzpatrick, notified this Court that it "will no longer defend this litigation and hereby defaults." (Letter of Default dated January 26, 1984). Fitzpatrick's letter, however, requested that the court not enter a default judgment against Future Positions until the final determination of the allegations against the other named defendants.

## DISCUSSION

The seminal case concerning the propriety of a default judgment against less than all of the defendants in an action is *Frow v. De La Vega*, 82 U.S. 552, 21 L.Ed. 60 (1872). De La Vega sued Frow and thirteen other defendants claiming a conspiracy to defraud him out of a tract of land through the use of forged documents. After Frow failed to answer, the trial court entered a default judgment against him, declaring title to the land to belong to plaintiff. After a trial, and on the merits of the action, the court held in favor on the remaining defendants and dismissed the complaint as to them. The Supreme Court reversed the judgment against Frow, ruling that where the alleged liability is joint, a final judgment should not be entered against a defaulting defendant until all of the defendants have defaulted, or until there has been an adjudication as to the liability of the remaining defendants. The Court, disturbed by the absurd inconsistency of the two judgments, instructed that:

> The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default ... and proceed with the cause upon the answers of the other defendants. The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in any way. He can adduce no evidence, he cannot be heard at the final hearing. But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.

82 U.S. at 554.

The Second Circuit has expressed doubt that *Frow* retains any force subsequent to the adoption of Rule 54(b) of the Federal Rules of Civil Procedure. *See International Controls Corp. v. Vesco*, 535 F.2d 742, 746–47 n. 4 (2d Cir.1976) ("[A]t most, *Frow* controls in situations where the liability of one defendant necessarily depends upon the liability of the others."). Rule 54(b) provides:

> [W]hen multiple parties are involved, the court may direct entry of a final judgment as to one or more but fewer than all of the ... parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Under the circumstances in the case *sub judice*, Rule 54(b) requires the court to determine whether no just reason exists to delay entry of a final judgment.

One court has expressed the view that the passage of Rule 54(b) subsequent to *Frow* dictates the use of a balancing test to determine the propriety of entering default judgments against fewer than all the de-

fendants in multi-defendant actions. *Westinghouse Electric Corp. v. Rio Algom Ltd.*, 473 F.Supp. 382, 388 (N.D.Ill.1979), *aff'd* 617 F.2d 1248 (7th Cir.1980). The district court in *Westinghouse Electric* described the balancing test it envisioned:

> Under the amended rule, a district court has a discretionary power to make final an adjudication that fully disposes of one or more but less than all of the parties. In exercising its discretion, the court must weigh the policy against piecemeal adjudication against the hardship and injustice which might result if the entry of final judgment and any review thereof were delayed until the case is completely terminated. The rule thus attempts to strike a balance between premature decision-making and the pragmatic needs of the litigants in complex multiple-party actions. To achieve this objective, it essentially regulates the time when district courts may enter final judgment.

473 F.Supp. at 389. The *Westinghouse Electric* case involved an antitrust action against 12 foreign and 17 domestic corporations. Nine foreign defendants failed to appear and answer or otherwise plead to the complaint. 473 F.Supp. at 384–85. The district court ruled that entry of default judgments against the nine defaulting defendants was appropriate, citing the facts that (1) plaintiff faced the possibility that the foreign corporations may conceal or transfer their assets beyond execution; (2) the defaults were deliberate and not the result of inadvertence or excusable neglect; and (3) the defaulting parties have been persistently uncooperative to the plaintiff's discovery efforts.[1]

The Seventh Circuit affirmed the district court, but took a slightly different approach in its analysis. The appellants argued that the specter of inconsistent adjudications precluded entry of the judgment. 617 F.2d at 1257. The circuit court analyzed this contention, concluded that a finding of liability as to the nine defaulting defendants was not inconsistent as to a finding of no liability as to the other twenty, and therefore held that no just reason existed to delay the entry of judgment. *Id.* at 1257–58. The court's reasoning is significant to a resolution of the issue *sub judice.* The Circuit Court observed that in an antitrust action against twenty-nine defendants, all twenty-nine defendants could be found liable or only a small group of the defendants might be found to have conspired to fix prices. Thus a finding as to liability of the nine defaulting defendants is not inconsistent with an exoneration of the other twenty. 617 F.2d at 1257.

In an action such as that at bar, where several defendants are charged with transferring funds to one of the defendants, all of the defendants might be found liable, or fewer than all of the defendants might be found liable; but never would only a transferor or only a transferee be found liable. Such a situation, however, becomes a possibility upon the entry of a default judgment solely against Future Positions. Although all of the alleged transferors might be exonerated, the transferee would nevertheless be held liable. A finding of liability as to the transferee but no liability as to all transferors would certainly be inconsistent and unjust.

The *Frow* Court's mandate that courts should avoid logically inconsistent adjudications as to liability is clearly applicable to the case at bar, thereby precluding a determination under Rule 54(b) that there is "no just reson for delay." Absent defaults by an additional defendant, the Trustees' motion for entry of a default judgment against Future Positions must be denied.

So Ordered.

---

1. The district court went on to observe that a default judgment is a significant procedural tool for enforcing compliance with the rules of procedure. *See* 473 F.Supp. at 390.