**NICHIRO GYOGYO KAISHA, LTD. and Nichiro Pacific, Ltd., Petitioners,**

v.

**Isaac C. NORMAN, Respondent.**

**No. 4471.**

Supreme Court of Alaska.

Feb. 22, 1980.

---

John S. Hedland and James T. Brennan, Rice, Hoppner, Hedland, Fleischer & Ingraham, Anchorage, for petitioners.

James D. Rhodes, Cole, Hartig, Rhodes, Norman & Mahoney, Anchorage, for respondent.

## OPINION

Before RABINOWITZ, C. J., CONNOR and MATTHEWS, JJ., and DIMOND, Senior Justice.

RABINOWITZ, Chief Justice.

This petition is brought from the superior court's imposition of attorney's fees as a condition granting a motion to set aside a default judgment.[1] The case arose out of the failure of a crab processing venture in Adak. Respondent Norman instituted this litigation by bringing suit against Nichiro Gyogyo Kaisha, Ltd. (NGK) claiming damages for the alleged failure of the corporation to honor a stock purchase agreement.

NGK filed an answer and counterclaim. Subsequently, in October 1977, Norman was granted leave to file an amended complaint which added Nichiro Pacific, Ltd. [NPL] as a defendant and alleged several additional claims for relief relating to this business venture. NGK then filed a motion to dismiss the amended complaint. The motion was denied by the superior court. Thereafter, Norman obtained an entry of default against NPL and a default judgment in the amount of $2,530,715.20. NPL subsequently moved to vacate the default judgment under Civil Rules 55(e) and 60(b).[2] The superior court vacated the default and the default judgment reasoning as follows:

We find no fraud to have been committed by the plaintiff in his presentation of valuations in obtaining the default judgment against Nichiro Pacific. Defendant has presented as reasons for its oversight the press of business occasioned by the return from a two-week absence and confusion with the proceedings in a similar action. There have been allegations by plaintiff of dilatory conduct by defendant's attorneys herein. Defendants have not presented evidence excusing the inadvertence or neglect of their attorneys. Nevertheless, the sanction of a several million dollar judgment against the defendant seems extremely severe when caused entirely by the carelessness of defendant's attorney. The prejudice to plaintiff of having to prove his case on the merits cannot be considered. However, the plaintiff has suffered prejudice in the delay of the ultimate resolution of

1. Alaska R.Civ.P. 55(e) provides:

    *Setting Aside Default.* For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

2. Alaska R.Civ.P. 60(b) provides, in part:

*Mistakes —Inadvertence —Excusable Neglect —Newly Discovered Evidence —Fraud — Etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise or excusable neglect; . . .

this case and the great expense involved in obtaining and defending these defaults. It is noted that prior to plaintiff's amendment of the complaint this case had laid dormant for nearly two years.

In vacating the default and default judgment, the superior court also ordered NPL to pay Norman's attorney's fees "for the preparation and defense of these defaults both in this motion and the previous motion to set aside for failure to serve notice of the default hearing." The attorney's fees eventually awarded, pursuant to the superior court's decision, were in the amount of $12,000.

In this petition for review, NPL and NKG contend that the superior court erred in awarding attorney's fees. They advance four arguments in support of their primary thesis, one of which we find meritorious, and thus we need not consider the others.

■ Alaska Civil Rule 60(b) expressly provides that relief from a default judgment may be granted "upon such terms as are just."[3] Among the terms that the trial court is permitted to impose are attorney's fees relating to the default proceedings.[4] As the Tenth Circuit noted in *Littlefield v. Walt Flanagan and Co.*, 498 F.2d 1133, 1136 (10th Cir. 1974) (citation omitted):

> The imposition of conditions in an order vacating a default is a device frequently used to mitigate any prejudice which plaintiff may suffer by allowing defendants to plead.

In the case at bar, the reasons articulated by the superior court for its award of attorney's fees were sufficient to justify such an award. NGK and NPL do not question the sufficiency of the superior court's reasoning nor do they attack the amount of the award. Instead, they contend that the entries of both the default and default judgment were improper as a matter of law, and thus no attorney's fees should follow from setting aside the default.

■ Normally the decision whether or not to set aside a default or default judgment, or whether to impose terms and conditions are subjects left to the discretion of the trial court.[5] However, in the event either the default or the default judgment were unauthorized, then a party should not be penalized for any prejudice the other party incurred in seeking the default or default judgment. For it would be an abuse of discretion for the trial court to award attorney's fees in such circumstances.

As one of its grounds for requesting that the superior court set aside the default, NPL asserted that a default judgment should not have been entered against one defendant purportedly in default when the other allegedly jointly liable defendant in the same case was not in default. NPL renewed this argument in contending that the superior court should not have ordered the payment of attorney's fees.

■ It is a widely accepted principle of civil procedure that, when there are multiple parties, the entry of default as to one party should not result in a default judgment prior to the termination of the matter with the non-defaulting parties. In Moore's *Federal Practice*, it is stated:

> Where there are several defendants a question may arise as to whether, after entry of a default against one, a default judgment can be entered immediately against the defaulting defendant or whether entry must be postponed until all

---

3. *See* 10 C. Wright and A. Miller, Federal Practice and Procedure § 2700, at 350 (1973) (discussing the identical federal rule). For the text of Alaska R.Civ.P. 60(b), see note 2, *supra*. *See also Thorpe v. Thorpe*, 124 U.S.App.D.C. 299, 301, 364 F.2d 692, 694 (D.C. Cir. 1966); 3 A.L.R.Fed. 956 (1970 & Oct. 1979 Supp.).

4. *See Wilcox v. Triple D. Corp.*, 78 F.R.D. 5, 7–8 (E.D.Va.1978); *Morisse v. Defensive Instruments*, 55 F.R.D. 433, 435 (E.D.Wis.1972);

*Hanley v. Volpe*, 48 F.R.D. 387, 388 (E.D.Wis. 1970). *See also* 10 C. Wright and A. Miller, Federal Practice and Procedure § 2700, at 350–52 (1973); 3 A.L.R.Fed. 956, § 2[a] (1970 & Oct. 1979 Supp.).

5. *See* 10 C. Wright and A. Miller, Federal Practice and Procedure ¶ 2693, at 303–18 (1973); *Thorpe v. Thorpe*, 124 U.S.App.D.C. 299, 364 F.2d 692 (D.C. Cir. 1966).

the defendants are in default or the case is tried as to the defendants not in default. The latter alternative is the correct procedure where the liability of the defendants is joint. In *Frow v. De La Vega*, [15 Wall 552, 554, 21 L.Ed. 60 (1872)], the leading case, Justice Bradley stated:

'If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

'The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of other defendants. The defaulting defendant has merely lost his standing in court. . . . But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all.'

If, then, the alleged liability is joint a default judgment should not be entered against a defaulting defendant until all of the defendants have defaulted; or if one or more do not default then, as a general proposition, entry of judgment should await an adjudication as to the liability of the non-defaulting defendant(s). If joint liability is decided against the defending party and in favor of the plaintiff, plaintiff is then entitled to a judgment against all of the defendants—both the defaulting and non-defaulting defendants. If joint liability is decided against the plaintiff on the merits or that he has no present right of recovery, as distinguished from an adjudication for the non-defaulting defendant on a defense personal to him, the complaint should be dismissed as to all of the defendants—both the defaulting and the non-defaulting defendants.[6]

Norman's amended complaint alleges that the two corporations, NGK and NPL, acted as a single corporate entity in regard to the significant facts set forth in the amended complaint and are in essence the alter egos of each other. In his amended complaint, Norman requests "[t]hat any adjudgment rendered pursuant to Plaintiff's prayer should be rendered joint and several against both Defendant NICHIRO GYOGYO KAISHA, LTD. and Defendant NICHIRO PACIFIC, LTD."

■ Thus, the amended complaint, on its face, alleged joint liability of NGK and NPL. Also, it is undisputed that one of the defendants, NGK, had answered the complaint and was not in default at the time the default and default judgment were entered against NPL. Although a default may have been properly entered against NPL,[7] a default judgment should not have been entered against NPL, since NGK had not had an opportunity to defend on the merits. Under these circumstances where

---

6. 6 Moore's Federal Practice ¶ 55.06, at 55–81 to 82 (1976) (footnote omitted). *See also* 10 C. Wright and A. Miller, Federal Practice and Procedure § 2690, at 288–91 (1973); *United States v. Peerless Ins. Co.*, 374 F.2d 942, 944–45 (4th Cir. 1967); *Exquisite Form Industries, Inc. v.*

*Exquisite Fabricos of London*, 378 F.Supp. 403, 415–16 (S.D.N.Y.1974).

7. Two of NGK and NPL's other specifications of error address the issue of whether the entry of default was error. Given the inadequacy of the record, we do not address these issues.

the default judgment was improperly entered, the superior court abused its discretion in awarding attorney's fees to Norman as a condition of the setting aside of the default judgment.[8]

The award of attorney's fees is REVERSED.

BOOCHEVER and BURKE, JJ., not participating.

8. From the record we do have, it appears that the superior court's award of attorney's fees was a condition to the setting aside of the default judgment and not the entry of default. Any prejudice to respondent Norman seems to have occurred from his seeking and attempting to enforce the default judgment and his subsequent efforts to defend it from attack. We therefore express no opinion at this time as to whether attorney's fees should be awarded as a condition for setting aside of the entry of default. On remand, the question is left to the superior court.