STATE OF FLORIDA EX REL. THE DEPARTMENT OF INSURANCE OF THE STATE OF FLORIDA, RECEIVER FOR UNITED SOUTHERN ASSURANCE COMPANY, A FLORIDA CORPORATION AUTHORIZED TO TRANSACT AN INSURANCE BUSINESS IN FLORIDA, APPELLEE, V. COUNTRYWIDE TRUCK INSURANCE AGENCY, INC., A FLORIDA CORPORATION, APPELLEE, AND COUNTRYWIDE INSURANCE AGENCY, INC., A NEBRASKA CORPORATION, AND DAVID L. FULKERSON, APPELLANTS.

602 N.W. 2d 432

Filed November 12, 1999. No. S-98-794.

Steven D. Davidson, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellants.

Mark E. Novotny and Kyle Wallor, of Lamson, Dugan & Murray, for appellee State of Florida.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is an action brought by the State of Florida on the relation of the Department of Insurance of the State of Florida, the receiver of United Southern Assurance Company (USAC), an insolvent insurance company, against Countrywide Truck Insurance Agency, Inc. (Truck); Countrywide Insurance Agency, Inc. (Agency); and David L. Fulkerson. The petition alleges that Truck collected premiums for USAC but failed to remit them pursuant to the parties' agreement. Agency is alleged to be the "alter ego" of Truck, and Fulkerson is alleged to be the operator, director, and controlling person of both Truck and Agency.

Florida filed a motion for default judgment against Truck upon Truck's failure to file a responsive pleading. Agency and Fulkerson, who were not in default, moved to stay the entry of default judgment against Truck until after trial. The district court for Douglas County, Nebraska, overruled the motion to stay, granted the motion for default judgment, and entered judgment against Truck in favor of Florida in the amount of $4,997,210. Upon consideration of the appeal of Agency and Fulkerson from this order, we conclude that the district court erred in denying the requested stay and entering the default judgment, and we

therefore reverse, and remand for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

In Florida's petition filed January 12, 1998, it alleged that its Department of Insurance served as the liquidator of USAC pursuant to the Florida Insurers Rehabilitation and Liquidation Act, Fla. Stat. Ann. § 631.001 et seq. (West 1996). It further alleged that Truck was a Florida corporation with its principal place of business in Omaha, Nebraska, and that Agency was a Nebraska corporation and the "alter ego" of Truck. Florida alleged that the operations of the two corporations were identical in that both utilized the same premises, equipment, and personnel, and that Agency was therefore "indistinguishable" from Truck. Florida further alleged that Fulkerson was a resident of Nebraska and at all times material was the officer and/or director and controlling person of both Truck and Agency.

Florida alleged that on or about January 1, 1989, USAC and Truck entered into a "General Agency Agreement," pursuant to which Truck functioned as an insurance agent on behalf of USAC in Nebraska and numerous other states and collected premiums for insurance products provided by USAC. During the months of May, June, July, and August 1997, Truck allegedly collected and reported collecting USAC premiums which, after deducting the 18.5 percent commission to which Truck was entitled, amounted to $3,171,817. Florida further alleged on information and belief that "defendants" also collected additional premium deposits that totaled $2,325,401 and that "defendants" remitted only about $500,000, leaving a balance due and owing of at least $4,997,218. Based upon these factual allegations, Florida sought relief against Truck, Agency, and Fulkerson on nine separately designated "causes of action": conversion of trust funds, statutory obligation to remit premium, enforcement of security interest, fraudulent conveyance, receivership fraudulent conveyance, conversion, breach of contract, breach of fiduciary duty, and accounting. Each "cause of action" refers to Truck, Agency, and Fulkerson collectively as "defendants."

Although Truck was served with summons, it failed to file a responsive pleading, and Florida moved for default judgment,

requesting that the court enter judgment against Truck in the amount of $4,997,210; require Truck to provide an accounting of all premiums collected by it; and direct that Truck turn over its assets, including its books and records, to Florida. Agency and Fulkerson filed a motion to stay the entry of the default judgment against Truck, based upon the assertion that because Florida sought relief jointly against all named defendants, the entry of a default judgment against Truck would operate to their prejudice. On July 6, 1998, the district court granted Florida's motion for default judgment against Truck in the amount of $4,997,210, plus costs and interest, and directed Truck to turn over control of all assets, including its books and records, to Florida. The record reflects no hearing or receipt of evidence on the issue of damages. In the same order, the court overruled the motion to stay entry of default judgment. Agency and Fulkerson perfected a timely appeal, which we removed to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts.

## ASSIGNMENT OF ERROR

Agency and Fulkerson assign as error, restated, the entry of a default judgment against Truck for the relief demanded in the petition and the denial of their motion to stay entry of default judgment.

## SCOPE OF REVIEW

■ We have held that in reviewing a trial court's action in vacating or refusing to vacate a default judgment, an appellate court will uphold and affirm the trial court's action in the absence of an abuse of discretion. *First Nat. Bank of York v. Critel*, 251 Neb. 128, 555 N.W.2d 773 (1996). We have not previously addressed the applicable standard of review in a direct appeal from an entry of a default judgment. Neb. Rev. Stat. § 25-1302 (Reissue 1995) provides in relevant part, "In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment may be proper." We therefore conclude that in an appeal from the entry of a default judgment, or the denial of a motion to stay entry of

a default judgment, an appellate court will affirm the action of the trial court in the absence of an abuse of discretion.

## ANALYSIS

### FROW DOCTRINE

The principal issue in this appeal is whether the district court erred in not applying what has become known as the *"Frow* doctrine," which arose from the opinion of the U.S. Supreme Court in *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L. Ed. 60 (1872). In that case, De La Vega filed suit against Frow and 13 other defendants, alleging that 8 of the defendants, including Frow, fraudulently obtained a tract of land by various devices, including the use of a forged power of attorney. All defendants except Frow filed timely answers. On application of De La Vega, the district court entered the equivalent of a default judgment against Frow in which it determined that De La Vega had title to the land and awarded injunctive relief. The case was then tried and resolved in favor of the answering defendants, resulting in its dismissal. In his appeal, Frow contended that the court erred in entering judgment against him while the case was still pending on the merits as to the answering defendants.

The Supreme Court reversed the judgment against Frow, holding:

If the court in such a case as this can lawfully make a final decree against one defendant separately, on the merits, while the cause was proceeding undetermined against the others, then this absurdity might follow: there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill. And such an incongruity, it seems, did actually occur in this case. Such a state of things is unseemly and absurd, as well as unauthorized by law.

The true mode of proceeding where a bill makes a joint charge against several defendants, and one of them makes default, is simply to enter a default and a formal decree *pro confesso* against him, and proceed with the cause upon the answers of the other defendants. The defaulting defendant

> has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing. But if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike—the defaulter as well as the others. If it be decided in the complainant's favor, he will then be entitled to a final decree against all. But a final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.

82 U.S. at 554.

The Court in *Frow* did not identify under what specific circumstances it is inappropriate to enter a default judgment against one of multiple defendants. See *Farzetta v. Turner & Newall, Ltd.*, 797 F.2d 151, 154 n.2 (3d Cir. 1986) (noting, inter alia, that *Frow* opinion does not describe "relationship between Frow and his co-defendants"). Various courts and commentators have taken different approaches to the applicability of *Frow*.

According to one treatise, *Frow* establishes a general rule that "when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against that defendant until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted." 10A Charles A. Wright et al., Federal Practice and Procedure: Civil § 2690 at 73 (3d ed. 1998). Wright further states that the *Frow* doctrine also applies where liability is joint and several and even "probably can be extended to situations in which several defendants have closely related defenses." *Id.* at 76. Several courts have applied *Frow* in accordance with this approach. See, *Farzetta v. Turner & Newall, Ltd., supra* (holding that *Frow* stands for proposition that if facts are proved at trial which exonerate answering defendants and that as matter of logic preclude liability of defaulting defendant, plaintiff cannot obtain judgment against defaulting defendant, even though defaulter failed to participate in proceeding in which exculpatory facts were proved); *Gulf Coast Fans v. Midwest Elec. Importers*, 740 F.2d 1499 (11th Cir. 1984) (noting that when defendants are similarly situated, though not jointly liable, judgment should not be entered against

defaulting defendant if other defendant prevails on merits); *Federal Deposit Ins. Corp. v. Manatt*, 723 F. Supp. 99 (E.D. Ark. 1989) (stating that when defendants are sued jointly and severally and one defaults, judgment should not be entered against defaulter until matter has been adjudicated as to all defendants); *Warrington U.S.A., Inc. v. Allen*, 631 F. Supp. 1456 (E.D. Wis. 1986) (stating that when complaint makes joint charge against two or more defendants and one fails to answer, judgment should not be entered against defaulter until matter has been adjudicated as to all defendants).

Other authorities interpret *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L. Ed. 60 (1872), more narrowly. A noted commentator states:

> *Frow* stands for the narrow rule that a default judgment may not be entered against one of several defendants when:
>
> "the theory of recovery is one of true joint liability, such that, as a matter of law, no one defendant may be liable unless all defendants are liable, or; the nature of the relief demanded is such that, in order to be effective, it must be granted against each and every defendant."

10 James W. Moore, Moore's Federal Practice § 55.25 at 55-45 and 55-46 (3d ed. 1999). Under this approach,

> *Frow* . . . does not apply to cases involving the joint and several liability of multiple defendants for damages, because in such a case the liability of each defendant is not necessarily dependent upon the liability of any other defendant, and plaintiff may be made whole by a full recovery from any defendant.

*Id.* at 55-46.

Some courts have followed the narrow interpretation of *Frow* articulated by Moore. See, *McMillian/McMillian, Inc. v. Monticello Ins. Co.*, 116 F.3d 319 (8th Cir. 1997) (finding *Frow* inapplicable where defendants had closely related interests but were not alleged to be jointly liable); *In re Uranium Antitrust Litigation*, 617 F.2d 1248 (7th Cir. 1980) (holding that *Frow* does not apply where liability is joint and several); *Martin v. Coughlin*, 895 F. Supp. 39 (N.D.N.Y. 1995) (holding that *Frow* prohibits entry of default judgment against one of several defendants only: (1) where theory of recovery is one of true joint

liability, such that, as matter of law, no one defendant may be liable unless all defendants are liable, or (2) where nature of relief demanded is such that, in order to be effective, it must be granted against every defendant); *Montcalm Pub. Corp. v. Ryan*, 807 F. Supp. 975 (S.D.N.Y. 1992) (holding that where joint and several liability of multiple defendants was alleged, court may enter default judgment against any defendants who fail to appear); *Days Inns Acquisition Corp. v. Hutchinson*, 707 So. 2d 747 (Fla. Dist. App. 1997) (recognizing that where relief against one defendant is completely dependent upon liability of codefendant, it is improper to enter default judgment until liability of codefendant is decided). This approach is aptly summarized in *In re Uranium Antitrust Litigation*, 617 F.2d at 1257-58:

> *Frow* involved a claim of a joint tort to defraud the plaintiff of title to a res. To the extent that it holds that there cannot be inconsistent adjudications as to joint liability or as to a single res in controversy this ancient equity case remains good law. But to apply *Frow* to a claim of joint and several liability is to apply that venerable case to a context for which it was never intended, and ignores the several or independent aspects of the claim set forth in this complaint. The result in *Frow* was clearly mandated by the Court's desire to avoid logically inconsistent adjudications as to liability. However, when different results as to different parties are not logically inconsistent or contradictory, the rationale for the *Frow* rule is lacking.

The appellate courts of Nebraska have never specifically recognized or applied the *Frow* doctrine. However, two reported cases address circumstances in which a default judgment was entered against one of several defendants. In *Grant v. Clarke*, 58 Neb. 72, 78 N.W. 364 (1899), the plaintiff brought an action against multiple defendants to foreclose a mortgage securing two promissory notes. The court entered a default judgment against one of the defendants and, after trial, resolved the action against the other defendants. On appeal, this court found that there was no proof establishing the plaintiff's title to the notes and his right to foreclose the mortgage securing them, and thus we reversed the order of the district court. However, without mentioning *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L.

Ed. 60 (1872), this court noted that as to a defendant who defaulted, the averments of the petition were taken as true, and therefore as to the defaulter, the original foreclosure decree entered by the district court was still valid.

In *German-American Bank of Milwaukee v. Stickle*, 59 Neb. 321, 80 N.W. 910 (1899), a bank sued four defendants on a promissory note. One defendant answered, denying the execution of the note, and the other three defaulted. A jury found in favor of the answering defendant, and the trial court dismissed the action as to all defendants. On appeal, this court noted without reference to *Frow* that the trial court was correct in not instructing the jury to return a verdict against the defaulted defendants, stating:

> The business of the jury was to try issues of fact, and, as between the plaintiff and the defaulted defendants, there was no issue of fact to try. The claim of the bank against [the defaulters] was confessed, and judgment should have been rendered accordingly. The court therefore erred in dismissing the action.

*Id.* at 325-26, 80 N.W. at 911.

### Applicability of *Frow* in This Case

Florida characterized the relationship of Agency and Truck as follows:

> Agency is the alter ego of Truck, its operations being identical to Truck's, consisting of:
> A. the same persons;
> B. engaged in the same business activities;
> C. utilizing the same assets and personnel; and
> D. operating from the same premises with the same telephone numbers, the same network of insurance producers, the same computer system, and is otherwise indistinguishable from Truck.

In addition, it alleged that Fulkerson "functioned as an officer and/or director, as well as a controlling person" of both corporations.

A similar relationship between defendants was alleged in *Nichiro Gyogyo Kaisha v. Norman*, 606 P.2d 401, 404 (Alaska 1980), where the plaintiff alleged that two corporations "acted

as a single corporate entity in regard to the significant facts set forth in the amended complaint and are in essence the alter egos of each other." One of the corporations answered, but the other defaulted, and the plaintiff obtained a default judgment. Characterizing the claim as one alleging joint liability and citing the *Frow* doctrine, the court held that the default judgment was improperly entered because the answering defendant had not had an opportunity to defend on the merits.

Additionally, as one of its theories of recovery in the instant petition, Florida alleged a fraudulent transfer of assets from Truck to Agency. In this regard, it asserted that the three named defendants "undertook a course of action between and among themselves to strip substantially all value from Truck and transfer it to Agency, both of which companies were controlled by defendant Fulkerson." Similar allegations were considered in *In re Vantage Petroleum Corp.*, 43 B.R. 257 (Bankr. E.D.N.Y. 1984), where bankruptcy trustees alleged that debtors and other defendants fraudulently transferred assets to a corporate entity alleged to be an alter ego of the transferors. In determining that the *Frow* doctrine precluded entry of a default judgment against the transferee corporation where other defendants were not in default, the court reasoned that

> where several defendants are charged with transferring funds to one of the defendants, all of the defendants might be found liable, or fewer than all of the defendants might be found liable; but never would only a transferor or only a transferee be found liable. Such a situation, however, becomes a possibility upon the entry of a default judgment solely against [the transferee]. Although all of the alleged transferors might be exonerated, the transferee would nevertheless be held liable. A finding of liability as to the transferee but no liability as to all transferors would certainly be inconsistent and unjust.

*Id.* at 260.

As we interpret *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552, 21 L. Ed. 60 (1872), a trial court should defer entering a default judgment against one of multiple defendants where doing so could result in inconsistent and illogical judgments following determination on the merits as to the defendants not in

default. Under the alter ego and fraudulent transfer theories asserted by Florida, a trial on the merits could only result in the liability of both Truck and Agency or the liability of neither. However, the entry of default judgment against Truck could lead to the illogical and inconsistent result that Truck, the alleged fraudulent transferor, would be liable, whereas Agency, the alleged alter ego and fraudulent transferee, would not. Furthermore, in asserting its alternative theories of recovery, Florida alleges joint and collective action on the part of the defendants, as opposed to independent acts on the part of each named defendant. It alleges that "defendants have converted plaintiff's trust funds to their own benefit," that "defendants have failed and refused to turn over" premiums collected, and that the "transfer of the Truck business and assets and/or USAC premium to other entities constitutes unlawful distributions for the benefit of defendants in violation of their fiduciary obligations to USAC and plaintiff." In light of these allegations of alter ego, fraudulent transfer, and collective action, we construe the operative petition, taken as a whole, as alleging that the three named defendants are jointly liable as a single entity.

Because the default judgment against Truck and a judgment on the merits in favor of Agency and Fulkerson would be logically inconsistent and prejudicial to the interests of Agency and Fulkerson, we conclude that the *Frow* doctrine is applicable in this case involving, inter alia, allegations of joint liability, and that Agency and Fulkerson have sufficient stakes in the outcome of the controversy to afford them standing to appeal from the default judgment against Truck. See, *Hussey, Gay & Bell v. Georgia Ports Authority*, 204 Ga. App. 504, 420 S.E.2d 50 (1992); *C. W. Matthews Contracting Company, Inc. v. Studard*, 201 Ga. App. 741, 412 S.E.2d 539 (1991). To the extent that *Grant v. Clarke*, 58 Neb. 72, 78 N.W. 364 (1899), and *German-American Bank of Milwaukee v. Stickle*, 59 Neb. 321, 80 N.W. 910 (1899), are inconsistent with this determination, they are overruled.

■ Also pertinent to our review is the longstanding principle of Nebraska law that the amount of damages alleged is not proved by default. Neb. Rev. Stat. § 25-842 (Reissue 1995) provides, "Every material allegation of the petition not controverted

by the answer . . . shall, for the purposes of the action, be taken as true . . . . Allegations of value or of amount of damage shall not be considered as true by failure to controvert them." Applying this statutory language, we have held that where a defendant is in default, the allegations of the petition are to be taken as true against him, *except allegations of value and amount of damage.* See, *Gatchell v. Henderson*, 156 Neb. 1, 54 N.W.2d 227 (1952) (holding that amount of default judgment should have been limited to amount of damages established by evidence); *Slater v. Skirving*, 51 Neb. 108, 70 N.W. 493 (1897) (holding that necessity of proof on default arises only with respect to value or amount of damages). In the present case, no evidence was offered to substantiate the $4,997,210 in damages for which Truck was adjudged liable by default, and the district court therefore had an inadequate factual basis upon which to enter judgment against Truck.

For these reasons, we conclude that the district court abused its discretion in denying the motion to stay entry of a default judgment against Truck pending resolution of the claims against Agency and Fulkerson and in entering the default judgment against Truck. The district court should have entered an order finding Truck to be in default and, therefore, ineligible to assert ·defenses or participate in trial, but should have deferred any entry of judgment until after the claims against Agency and Fulkerson were adjudicated.

We note that the judgment in this case was entered 9 days prior to the effective date of Neb. Rev. Stat. § 25-705(6) (Cum. Supp. 1998), which provides that in a civil case involving multiple parties,

> the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at

any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

We express no opinion regarding the applicability of the *Frow* doctrine after the effective date of this statute.

## CONCLUSION

For the reasons stated, we conclude that the district court abused its discretion in entering a default judgment in the amount of $4,997,210 against Truck. The judgment is therefore reversed and vacated, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND VACATED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.